## The Merchants' Bank of Cleveland *v.* The Ohio Life Insurance and Trust Company.

1. An obligation fraudulently incurred is no cause for an attachment under section 191 of the code, unless it is an obligation by contract.
2. The fraudulent conversion of promissory notes, bills of exchange, etc., received in the usual course of business, for collection, is a breach of the contract of bailment, but does not create "an obligation fraudulently incurred."

At Chambers.—On motion to discharge an attachment for reasons:

1. Because the affidavit upon which said attachment issued is insufficient in law.

2. Because said attachment was wrongfully and improperly issued.

The action was for the recovery of $157,852.64 damages, by reason of the alleged fraudulent and wrongful conversion to the defendant's use of certain promissory notes, drafts, and bills of exchange, to that amount, the property of the plaintiff, remitted to the defendant for collection.

The affidavit, upon which the attachment issued, alleged " that the claim upon which the petition in this case is founded, arises in the manner, and is of the nature, following:

The defendant, on the ―――― day of August, 1857, at the city of New York, had in his possession, the property of the plaintiff, the promissory notes, drafts, and bills described and set forth in the schedule, part of the petition in this case; which, the defendant had and held for the sole purpose of collecting for the plaintiff; which said notes, drafts, and bills amounted to and were of the value of $157,852.64; that being so in possession of said notes, bills, and drafts, the defendant, then and there, without any authority of the plaintiff, fraudulently and wrongfully pledged and hypothecated said notes, drafts, and bills for the use and benefit of defendant; and fraudulently and wrongfully transferred

and placed them out of the power and reach of the plaintiff, whereby plaintiff has been defrauded of them. And the affiant says, that the said claim of the plaintiff, set forth in said petition, is just; that the affiant believes that the plaintiff ought to recover, of the defendant in this suit, the full sum of $157,852.64, as in said petition set forth; and that the defendant fraudulently incurred the obligation for which this suit is about to be brought.

And this affiant further says, that he has good cause to, and does, believe that William Fuller, *and others named*, are respectively indebted to the said defendant in large sums, the precise amounts of which are unknown to this affiant. And further affiant saith not."

The motion to dismiss was submitted to the court on the petition and affidavit in attachment.

*Ranney, Backus & Noble, Williamson & Riddle,* and *Collins & Herron,* for plaintiff.

*Worthington & Matthews,* for defendant.

GHOLSON, J. In this case, an order of attachment having been issued by the clerk, a motion has been made to discharge it, on the part of the defendant. The ground of the motion is, that the affidavit upon which the clerk acted is not legally sufficient. The affidavit, which was made by an agent of the plaintiff, substantially shows that the plaintiff, a banking corporation in Ohio, transmitted to the defendant, in New York, in which city the defendant had an office, or agency, a large amount of securities for collection, which the defendant fraudulently used and converted to his own use. The conclusion of the affidavit is, that the defendant fraudulently incurred the obligation for which the suit is brought.

The code of civil procedure allows an order of attachment in a number of cases, the classes of which are distinctly and specifically pointed out in section 191. Of these classes, only the last appears to have reference to the origin or

foundation of the claim or demand of the plaintiff, the others applying to the conduct of the defendant, tending to defeat the remedy of the plaintiff, such as absconding, or intentionally preventing the service of process, or fraud in the disposition of property.

Where a defendant by such misconduct or fraud, shows an intention to defeat and render ineffectual the remedy of the plaintiff, in all actions for the recovery of money, an order of attachment is allowed. It appears to have been considered that fraud, in the inception of a contract or obligation, was sufficient to entitle a plaintiff to a like remedy; for he who would practice a fraud in contracting a debt, or incurring an obligation, might well be supposed to be likely to defeat the remedy for the debt or obligation.

It is upon the last ground provided, in the section of the code which has been cited, that the order of attachment has been issued in this case, a ground affecting, as has been stated, the origin of the plaintiff's claim or cause of action. A plaintiff, in a civil action for the recovery of money, is entitled to an order of attachment, the proper affidavit being made when the defendant " fraudulently contracted the debt or incurred the obligation for which suit is about to be, or has been, brought." The suit of the plaintiff must be brought for a debt or obligation. A debt, independent of the expression with which it is coupled in the statute, is well understood as only arising from a contract, and it has a still more limited sense in which it is used, as implying that the contract must be for the payment of a certain and liquidated amount of money. The term " obligation" is more general and indefinite. When used in connection with an action for the recovery of money, and as that for which the action is brought, it more naturally refers to something in the nature of a contract or agreement between the parties; but it has been used in a wider sense, and one class of obligations may be those arising from any breach of duty or infliction of injury; Pothier.

To determine whether " obligation" is used in its limited,

or in its widest and most general sense, we have the advantage of the limitation, that it must be "an obligation" which can be "fraudulently incurred," in the sense those words are used in the statute. As to the meaning of "fraud," we have the aid of legal definitions. "By fraud is meant all surprise, trick, cunning, dissembling, and other unfair way that is used to cheat any one;" 1 Domat. Civ. Law, §1259. "It is any cunning, deception, or artifice used to circumvent, cheat, or deceive another;" and this definition is said by Story, J., to be, "beyond doubt, sufficiently descriptive of what we may be called positive, actual fraud, where there is an intention to commit a cheat or deceit upon another, to his injury. But," he adds, "it can hardly be said to include the large class of implied or constructive frauds which are within the remedial jurisdiction of a court of equity. Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another;" 1 Story Eq. §187. Fraud of the first description is embraced under the two heads of *suppressio veri* and *suggestio falsi*. It is the ordinary legal sense of fraud, and when applied to contracts and obligations, conveys the idea that the assent of one party has been procured by some trick or device. Even in this sense of fraud, there is a limitation upon what might, in a general sense, be considered wrongful and fraudulent; for the fraud must have given rise to the contract—must have operated to induce the assent of the party upon whom the fraudulent device was practiced. What properly constitutes such fraud has been fully explained in a recent case, in which it is said: "*Dolus dans locum contractui* is the language of the civil law, not *dolus malus* generally; not the mere fraudulent conduct of the party trying to overreach his adversary; not mere misconduct and falsehood throughout, unless *dedit locum contractui*, because then comes in the equitable principle of the civil law, which forms a part of

all other systems of jurisprudence, whether founded upon it or not, being grounded on the highest consideration of natural equity, *ex dolo non oritur contractus.*" " General fraudulent conduct signifies nothing; general dishonesty of purpose signifies nothing; attempts to overreach go for nothing; an intention and design to deceive may go for nothing, unless all this dishonesty of purpose, all this fraud, all this intention and design, can be connected with the particular transaction, and not only connected with the particular transaction, but must be made to be the very ground upon which this transaction took place, and must have given rise to this contract;" 6 Clark & Finn. 232, 444, 447, *Attwood* v. *Small.*

It can not be doubted that as to the expression "fraudulently contracted the debt," the fraud intended, is of the character just described—it must have given rise to the contract of debt. Some device or unfair way by which credit was obtained, and the relation of creditor and debtor created, is the fraud intended. Now, the very same expression, "*fraudulently,*" thus applied to a contract of debt, is also applied to the incurring of an obligation. The language is, "fraudulently contracted the debt or incurred the obligation." And if the expression "fraudulently," as applied to the contracting a debt, has a clear and definite meaning, and may with perfect propriety have the same meaning when applied to incurring an obligation, are we to suppose that the legislature used the same word in a double sense? When a man, by any device or unfair way, obtains credit, he may be said to have fraudulently contracted a debt. But there are many contracts to which the assent of a party may be obtained, the effect of which is not in a strict and proper sense to create a debt. A party who has entered into such contracts, and has, by any device or unfair way, obtained from the other party his assent and the consideration, may, very properly, be said to have fraudulently incurred an obligation. In this view, the expression "fraudulently," as applied to debts and obligations, would have the

same meaning, and would necessarily limit the term "obligation" to the sense which, as has been said, taken in the connection with which it is found, is the more usual and ordinary one, the binding effect of some contract or agreement. If the opposite view be taken, and under "obligations" are embraced not only contracts, other than those by which a debt is created, but all torts and wrongful acts to which, in the wide sense which has been indicated, the term "fraudulent" can be applied, then that term can not be restricted to its proper and legal sense, as referring to actual and positive fraud, but must embrace, in its sweep, the wide field of constructive fraud, to which no limits have been assigned, but which courts of equity purposely keep without limit.

We have arrived at the conclusion, that the former is the correct view, and have been strengthened in this conclusion by several considerations to which it is proper to advert. We have traced the history of the introduction of the language, which has to be construed, into the legislation of this State. In the year 1831, an act was passed in the State of New York to abolish imprisonment for debt, and punish fraudulent debtors. In this act, the language in question occurs; and most obviously, as is shown both by the title of the act and its provisions, was only applied to cases of contract. This law of New York, in the year 1838, was substantially adopted by our legislature, and the very same expressions used in the New York law as applicable to cases of contract, are copied. In 1848, an act was passed by our legislature the object of which was to prevent frauds during the pendency of a suit, either at law or in chancery, which might defeat the judgment or decree. One of the grounds for an injunction or an order in the nature of attachment was: "That such defendant fraudulently contracted the debt, or incurred the obligation, upon which such suit is brought;" and another: "That the debt or obligation upon which the suit is brought was contracted by the defendant out of this State, and that such defendant, with intent to

defraud, hinder, or delay his creditors, absconded from his former place of abode," etc. Here the terms "debt and obligation" are clearly considered in the view of a contract.

It is well known that the New York Code of Civil Procedure was the model upon which ours was formed. In that code as in ours, the language under consideration occurs. But by other provisions in the New York Code, it most clearly appears that this language can only extend to cases of contract. For the very cases of tort and fraudulent breaches of trust which a wide and extended meaning of the words might possibly cover, are provided for by express and independent provisions. In New York, an arrest is allowed " when the defendant has been guilty of a fraud, in contracting the debt or incurring the obligation for which the action is brought, or in concealing or disposing of the property, for the taking, detention, or conversion of which the action is brought." And there is a provision for an " action for property fraudulently misapplied by a public officer, or by an attorney, solicitor, or counsellor, or by an officer or agent of a corporation or banking association, in the course of his employment as such, or by any factor, agent, broker, or other person in a fiduciary capacity," etc.; Code of New York, §179. As the action of those who framed the New York Code clearly shows that they did not suppose the words of their old law sufficient to cover these new classes of cases, it is reasonable to suppose that our commissioners would either have adopted the same express provisions, or have made the general ones more definite, if they desired to embrace within the purview of the law such wrongful acts and breaches of trust.

If we are called on to give a reason why the code did not embrace such new grounds of arrest, we think it may be found in the following remark of the code commissioners:

"The constitution discourages imprisonment in civil actions, and requires that we should restrict the causes of arrest for debt, to cases of fraud only. This we have endeavored to do."

The commissioners might well have supposed that the

provision of the constitution would fail to afford the protection intended, if the term "fraud" might be indefinitely enlarged under that expansive head of equity jurisdiction, denominated "constructive fraud."

In this connection it is proper to notice the remarks of the same commissioners, that they allow the property to be taken by attachment, whenever the body may be taken, and that when the defendant is chargeable with misconduct or fraud, it may issue upon any action for the recovery of money. It certainly can not be supposed that by misconduct, or fraud, the commissioners meant other descriptions of misconduct or fraud than those mentioned in the code. The terms are used in contradistinction to the case of non-residence, and without the least intention to express any opinion as to the extent of the other grounds of attachment, as to each of which the party may be said to be chargeable with both misconduct and fraud, the latter, according to the expressed intention of the commissioners, being an essential ingredient. But what shall be the character and description of the fraud essential in the several cases, is a matter on which no opinion is expressed by the commissioners, and we can not see that their remarks throw the light, on the subject under consideration, claimed by the counsel for the plaintiff.

There is another consideration entitled to weight in the construction of the clause of the code under consideration. We have a general expression, "incurring an obligation," and this general expression is preceded by one connected with it, which has a certain and definite meaning, and there is a general rule of construction which applies. It is "an undoubted rule, established by the cases, that where several words, preceding a general word, point to a confined meaning, the general word shall not have such a meaning as to extend its effect beyond subjects *ejusdem generis;*" 8 Ad. & E., N. S. 452, 463, *Reg.* v. *Nevill.*

The principle has been thus explained, if the legislature had meant the general words to be applied without restriction it "would have used only one compendious word;" 5 D. & E.

375, 379, *Rex.* v. *Wallis.* "The special words are 'fraudulently contracted the debt,' and these, as has been shown, by no means exhaust every kind of subject-matter *ejusdem generis*, so that effect may well be given to the words" incurring the obligation, "without including" torts and breaches of trust; 8 Ad. & E., N. S. 465.

The rule of construction applies with peculiar force to the present case. If the term, "incurring an obligation," is used in its most general sense, then it much more clearly embraces the case of contracting a debt than the case of a liability arising from a wrongful act or breach of trust. He who contracts a debt, may with propriety be said to incur an obligation, and when he is sued, it may well be said that the contract of debt is the obligation for which the suit is brought. He who wrongfully converts to his own use property with which he is intrusted, is, with more propriety, said to incur a liability; and when he is sued, it is for the wrongful act of conversion, rather than for an obligation, though in one case he may be under an obligation to make compensation. It thus appears that the only mode of construction which can give full and proper meaning to all the words of the statute is the one we have adopted. If the words, "incurring an obligation," are taken in the extensive sense, they leave nothing to be effected by the first, and apparently principal words, in the contemplation of the legislature, "fraudulently contracted the debt."

Upon looking at the affidavit which was made in this case, to ascertain what is the nature of the plaintiff's claim, it is probably susceptible of two constructions. The claim of the plaintiff may be considered as really founded on a contract of bailment, the breach being the conversion of securities deposited for collection. Or, it may be considered as a claim for the wrongful conversion of property. Now, in either view, it will be seen that the charge of fraud is in no respect material. The charge may be stricken out of the petition of the plaintiff and still leave a perfect cause of action. In either view, also, the claim of the plaintiff would be considered a

legal as distinguished from an equitable ground of suit.   If we had to determine whether, in entering into the contract of bailment, a fraud was practiced, we should have the benefit of the well-established rules of law to which reference has been before made.   But as to the conversion of the property, any fraudulent motive or intent being, in the view of the law, immaterial as respects the right of recovery, we have no legal rules to guide our inquiries.

The law does not attribute any quality to an act, or furnish any rules to ascertain its existence or character, unless such quality be essential to the effect intended—the giving or taking away some legal right or remedy.   He who converts to his own use the property of another, is liable on a plain principle of law, independent of any question of fraud or breach of trust.

The title by the plaintiff, and the conversion by the defendant, are the points to be considered.   A question of bailment is only important in view of the evidence to sustain the fact of conversion.   It may involve the necessity of a demand. But the liability where there has been a conversion equally arises, whether the defendant obtained the possession casually, by finding, or with the consent of the plaintiff.   This consideration we think material in determining whether the words which, in their original application, certainly only extended to legal actions, shall now receive a more extended application.

If we are correct in our view of the construction of the language of the code, as to the ground upon which the order of attachment was issued in this case, we can not see how it can be sustained.   The affidavit, in no view, can be construed as charging fraud in the contract of bailment; this is carefully avoided.   The affidavit is special, and we can only understand it as alleging fraud in the disposition of the property with which the defendant was entrusted, not in the obtaining the possession of the property.   A very wrongful and improper act may have been committed.   But we are satisfied that it is not shown by the statements in the affidavit that the

defendant fraudulently incurred an obligation, in the sense those words are used in the statute, and the order of attachment must therefore be discharged.

It may be proper to remark that as to any question presented in the argument, other than that as to the construction of the clause of the statute, we express no opinion.

Motion granted, and attachment dismissed.